66 So.2d 611

**STORY v. GLOBE INDEMNITY CO.**

No. 41114.

June 1, 1953.

Rehearing Denied July 3, 1953.

Benton & Moseley, Baton Rouge, for plaintiff-appellant-applicant.

Percy Macmurdo & Avant, Baton Rouge, for defendant-appellee.

PONDER, Justice.

We granted certiorari in this case to review the finding of the Court of Appeal, 61 So.2d 582, to the effect that Charles Edward

Story did not receive the fatal injury while performing services arising out of and incidental to the plumbing business.

In this suit the plaintiff seeks to recover compensation from the defendant, insurer of Carl L. Norder, employer of her deceased husband, who met his death as a result of a fatal accident alleged to have arisen out of and incidental to his employment in the course of his employer's plumbing business.

The Globe Indemnity Company, the defendant, issued a policy of compensation insurance to Carl L. Norder, alleged employer of decedent, on August 11, 1950, with coverage limited to the plumbing business, the pertinent provision of which is as follows:

"Plumbing N.O.C.—gas, steam, hot water or other pipe fitting—including house connections; shop operation; Drivers, Chauffeurs and their Helpers.—(Automatic sprinkler installation to be separately rated)."

The character of the decedent's employment must be ascertained from the written statements and the testimony of Norder, the employer, because the testimony of the other witnesses, all relatives and in-laws, does not throw much light on the agreement of employment between Norder and the decedent. The decedent, Charles E. Story, was the step-father-in-law of Carl L. Norder, the assured; in other words, Mrs. Carl L. Norder is the daughter of Mrs. Charles E. Story by a former marriage. Shortly after the accident, Norder made a written statement to the insurance adjuster, wherein he stated that the decedent had been employed by him to do some carpentry work in his hardware store and that this employment terminated on April 20, 1951. He stated that on April 20, 1951, he discussed with the decedent some plumbing work that decedent needed in his home. He stated that he had previously sold the decedent a second-hand bath tub and toilet and that he suggested a deal whereby he would have the plumbing work done for the decedent and that in turn the decedent would paint "the room of my camp." Norder was to furnish the paint, some food and groceries in order to assist the decedent, who was in poor financial circumstances. He stated, "I did not specify any amount of money" and "the purpose of the trip was to show him what colors to paint the various rooms and the way to the camp." This statement relates to the nature of the employment and the trip to the camp on April 21st, the following day, where and at which time the decedent received his fatal injury. Norder signed another statement on January 8th, before the attorney for defendant, wherein he stated: "On the same day (April 20, 1951), I told Story that I had work for him to do, but I was short of money. So Story suggested that I give him $20.00 or $25.00 a week to buy groceries to live on and apply the rest on the plumbing to be done at his home. * * * The work at the camp consisted of finishing the plumbing, painting the inside and outside and mis-

cellaneous carpenter work such as putting down baseboard, cabinet hinges, etc."

Norder admitted in his testimony, on trial of the case, that the decedent was a temporary employee. He testified that no work was done by Story at the camp and that the accident occurred shortly after their arrival. Some of the other witnesses testified that Story had placed putty in the nail holes, sanded the walls a little, and put paper strips on the walls prior to the accident. It appears that, a short time after the decedent arrived at the camp, he started down the steps which were about nine feet in height, tripped and fell, his head striking a concrete slab at the foot of the steps, fracturing his skull, which caused his death.

Norder's testimony and his written statements raise a serious question as to whether or not the decedent was intoxicated at the time he received the fatal injury.

Norder owned two camps adjacent to each other, one of which had not been completed. It was at this camp that the decedent received his fatal injury. Norder and his wife testified that they used the camp to entertain business associates and customers. However, Norder testified that he hoped to sell it for a profit. As pointed out by the Court of Appeal, the camp had not been completed at the date of the trial.

We are not impressed with Norder's testimony relating to his failure to produce any records showing the then present nature of his business and the nature of the decedent's employment when he was cross-examined by counsel for the defendant. His testimony in regards thereto is very evasive.

Norder's testimony leaves serious doubt as to whether he was still engaged in the plumbing business at the time the accident occurred. He had shortly before that time opened a hardware store and was actively engaged in that business. There is evidence in the record that some time in the past he had erected a few buildings, but it does not appear that he was actually engaged in the construction business. If he had been so engaged in the past, there is nothing to indicate that he was in that business at the time of the accident. Obviously the trial court and the Court of Appeal were not impressed with Norder's testimony because of his prior conflicting statements and the surrounding circumstances. The Court of Appeal referred to the discrepancies in the testimony and statements relating to the nature of decedent's employment and the fact that there was an implication that the assured had an interest in seeing that the plaintiff recover.

Under the facts and circumstances in this case, we cannot say that the trial court and the Court of Appeal erred in their finding of facts or that the decedent was injured while performing services arising out of and incidental to the plumbing business. If we were to concede that Norder was still engaged in the plumbing business at the time of the accident, the facts and circumstances in this case do not establish with any degree of certainty that the decedent

was performing services arising out of and incidental to the plumbing business. The burden of proof rests on the plaintiff and the failure on her part to bear it is fatal to the cause.

For the reasons assigned, the judgment is affirmed at the cost of plaintiff-relator .