LEMMON, Judge.
Roy A. Marty filed this suit against his employer, Western Auto Supply Company, and its insurer, Travelers Insurance Company, for workmen’s compensation benefits and medical expenses, alleging total and permanent disability from a cerebral hemorrhage sustained in the course of his employment. Marty died prior to trial, and his wife petitioned to be substituted as party plaintiff, seeking death benefits. After a trial on the merits, the trial court rendered a judgment awarding the benefits and expenses, and defendants appealed sus-pensively.
Marty, a small engine mechanic, was assigned to repair a washing machine, which had to be disassembled. Since the tub was “frozen” to the shaft, Marty and a coworker had to exert considerable physical effort in removing the part. Suddenly, Marty began to act as if he were drunk. Upon being placed in a sitting position, he could not maintain his balance. The manager rushed him to Baptist Hospital, where the doctor immediately diagnosed a cerebral vascular accident (C.V.A.). Within 24 hours Marty’s condition had deteriorated considerably. He eventually lapsed into a coma and ultimately died from the condition twenty months later.
Defendants concede Marty sustained the C.V.A. in the course of his employment, but contend the hemorrhage did not arise out of that employment. They argue neither testifying physician stated that the physical exertion caused or contributed to the midbrain hemorrhage.
Angiographic and ventriculographic studies confirmed that Marty sustained a spontaneous brain stem hemorrhage at the level of the midbrain and upper pons. The nerosurgeon, who treated Marty during his three weeks in Baptist Hospital, stated his opinion that Marty’s hemorrhage was caused either by arteriosclerotic changes over a long period of time in some vessels of the brain stem or by the rupture in that area of a microaneurism, a small saccular dilation or enlargement of a blood vessel. As to the issue in this case of whether physical exertion caused or contributed to the C.V.A., he testified that physical exertion alone cannot cause a hemorrhage in this area of the brain or anywhere else in the nervous system, but that exertion can aid in the production of a hemorrhage in a person who was already hypertensive or who had a predisposing lesion in the vascular system. However, he believed that when a person sustains a C.V.A. while under the influence of exertion, it was a matter of speculation whether or not the exertion actually aids in the development of the hemorrhage. In Marty’s case, since the doctor had no information of pre-existing hypertension and since a microaneurism *585 cannot be shown angiographically, he felt it improbable that physical exertion played any part in the onset of the hemorrhage.
The other physician, the chief neurologist at Veterans Hospital where Marty was transferred following his stay in Baptist Hospital, stated his opinion that physical exertion can contribute to a cerebral hemorrhage, especially in persons predisposed because of hypertension. Upon being shown two of Marty’s blood pressure recordings taken six years before the hemorrhage, he acknowledged that both were elevated. However, he did not specifically state that the increased pressure caused by exertion did contribute to Marty’s hemorrhage.
A fair evaluation of the testimony of both medical experts is that physical exertion cannot alone cause, but in combination with other factors can contribute to, the development of a cerebral hemorrhage. Furthermore, it is virtually impossible in a specific case to definitely determine how much, if at all, exertion contributes to a hemorrhage.
Under these circumstances we cannot agree with Travelers’ argument as to insufficiency of proof that Marty’s condition was causally related to the physical exertion he was experiencing at the onset of the hemorrhage. Although both doctors admitted the possibility of causal connection, neither stated that causal connection was a probability. However, as stated in 3 Larson, The Law of Workmen’s Compensation, § 80.32, p. 289 (1971):
“The distinction between probability and possibility should not follow too slavishly the witnesses’ choice of words, as sometimes happens in respect to medical testimony. A doctor’s use of such words as ‘might’, ‘could’, ‘likely’, ‘possible’ and ‘may have’, particularly when coupled with other credible evidence of a non-medical character, such as a sequence of symptoms or events corroborating the opinion, is in most states sufficient to sustain an award. It is a corn-mon experience of compensation and personal injury lawyers to find that the more distinguished a medical witness is, the more tentative and qualified are his statements on the witness stand. He will testify that the sledge-hammer blow on claimant’s head might have caused claimant’s headache, but hesitates to say positively that this was the only possible cause, and may concede on cross-examination that there could conceivably be other causes. The weight of such testimony, however, should not be too sharply discounted because of the disposition of the highly-trained scientific mind to refrain from unqualified statements or opinions on such matters as causation.”
See also Griffin v. Employers’ Liability Insurance Company, 186 So.2d 349 (La.App. 4th Cir., 1966).
Here, there was uncontradicted evidence that (1) Marty had been under the influence of physical exertion when the hemorrhage occurred and (2) tension in blood vessels resulting from physical exertion is a factor which can aid in the development of a hemorrhage. The trial court, also finding that Marty had previously exhibited high blood pressure under normal conditions, was apparently satisfied that there was an element of causation between the exertion and the stroke. We concur that the evidence taken as a whole establishes it to be more probable than not that the exertion required by Marty’s employment contributed to the hemorrhage which occurred in the course of employment.
VETERANS HOSPITAL BILL
Travelers contends the trial court erred in awarding Mrs. Marty the amount of the Veterans Hospital bill, since there was no right vested in her or the Veterans Administration to recover this item. In essence, Travelers claims Mrs. Marty was not liable for this bill and therefore cannot recover the amount of a bill which she cannot be required to pay.
*586 38 U.S.C. § 610, pertaining to eligibility for hospital care, provides that necessary hospital care within the limits of the facility may be furnished to a veteran of any war for any disability if the veteran is unable to defray the expenses. Furthermore, 38 C.F.R. 17.48(d) [1] provides that persons admitted to the hospital on this basis, who are entitled to reimbursement of the cost of hospital care by reason of workmen’s compensation statutes, will not be furnished hospital care or medical treatment without charge to the extent of the amount of entitlement to reimbursement.
If Marty had been eligible for hospitalization and treatment without charge, then his widow would not be entitled in this suit to the amount of the Veterans Hospital bill, since she would not be liable for payment. Drearr v. Connecticut General Life Ins. Co., 119 So.2d 149 (Orl.App.1960). But to be eligible for care without charge, the patient must both (1) not be able to defray the expenses and (2) not be entitled to reimbursement because of certain rights or statutes. Inasmuch as we have determined that the claim in this case is covered by workmen’s compensation statutes, then the cited regulation specifically provides that hospital care and medical treatment will not be furnished without charge.[2] The furnishing of hospital care therefore established a debt in favor of the Veterans Administration and against Marty and ultimately his widow.
In order to facilitate collection of hospital charges under these circumstances, 38 C.F.R. 17:48(d) further directs the Veterans Administration to require the patient to execute an assignment and power of attorney. The Veterans Administration failed to follow the directed procedure in this case. However, this failure only affected the right of the Veterans Administration to proceed directly against Travelers and Western Auto to collect the debt and did not affect the debtor-creditor relationship between Marty and the Veterans Administration.
Since Mrs. Marty is liable to the Veterans Administration for the reasonable cost of her husband’s hospital care and medical treatment in the amount of $7,593.00, she is entitled to recover that amount in this suit.
INTERVENTION
Aetna Life Insurance Company paid a total of $4,078.72 in medical expenses to or on behalf of Marty under a group disability, accident and health insurance policy. Since the “covered expenses” defined in the policy include only expenses incurred for the treatment of a “non-occupational disease or non-occupational injury,” Aetna intervened and sought recovery of this amount from Travelers and Mrs. Marty. The trial court judgment awarded Mrs. Marty the total medical expenses in the amount of $11,802.40 against Travelers and further awarded Aetna the amount of $4,078.72 against'both Travelers and Mrs. Marty. Travelers now contends this could result in its having to pay the latter item twice.
*587 All parties concede there should not be a double recovery from Travelers, and have stipulated that one appropriate means of avoiding this result is to reduce Mrs. Marty’s award for medical expenses by the amount she received from Aetna and to eliminate Mrs. Marty as a party cast on the incidental demand.
The judgment of the trial court is therefore amended to reduce Mrs. Marty’s award for medical expenses to $7,723.68, and the petition of intervention is dismissed as to Leona Cole Marty. As amended, the judgment is affirmed.
Amended and affirmed.

. 38 C.F.R. 17.48(d) provides in pertinent part:
“(d) Persons hospitalized pursuant to (provision regarding inability to defray the expenses), who it is believed may be entitled to hospital care or medical or surgical treatment or to reimbursement for all or part of the cost thereof by reason of any one or more of the following:
“(1) (i) * * *

“(iii) ‘Workmen’s Compensation’ or employer’s liability statutes, State or Federal:
sjs ‡ s¡s *i>
“will not be furnished hospital care, medical or surgical treatment, without charge therefor to the extent of the amount for which such parties, referred to in subparagraph (1) or (2) of this paragraph, are, or will become liable.”

. See also 38 C.F.R. 17.62, which provides for charges to a veteran when an eligibility requirement is not met.