292 So.2d 747 (1974)
Lucille LANDRY, widow of George T. VICKNAIR
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE CO. and Magnolia Plantation, Inc.
No. 5737.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1974.
Rehearing Denied May 23, 1974.
Writ Refused July 1, 1974.
*748 Porteous, Toledano, Hainkel & Johnson, New Orleans, James L. Donovan, Metairie, for defendants-appellants.
Kronlage, Dittmann & Caswell, Albert S. Dittmann, Jr., New Orleans, for plaintiff-appellee.
Before LEMMON, J., and FEDOROFF and GAUTHIER, JJ. Pro Tem.
LEMMON, Judge.
Magnolia Plantation, Inc. and its workmen's compensation insurer have appealed *749 from a judgment awarding death benefits and funeral expenses to the widow of Magnolia's employee, George Vicknair. Principal issues are (1) whether Vicknair's services, at the time of his fatal coronary occlusion, arose out of and were incidental to his employer's trade, business or occupation, as required by R.S. 23:1035, and (2) whether Mrs. Vicknair proved the attack was caused, aggravated or accelerated by employment activities.
Magnolia Plantation, Inc. was a closely held corporation, totally owned by the Caldwell family. The corporation primarily engaged in sugar cane farming.
Vicknair had worked as a mechanic and general handyman on plantations owned by the Caldwell family for 45 years prior to his death and for Magnolia since it was incorporated in 1966.
In 1969 Vicknair and the overseer were Magnolia's only regular, full time employees, although several other employees worked for hourly wages as their services were required. Vicknair worked six to seven days per week and was always on call. He performed whatever services were required or requested at any time by Albert Caldwell, the plantation manager who was also a corporate officer, director and major shareholder. As manager, Caldwell directed all labor operations on the plantation for the corporation.
On Sunday, August 17, 1969 Caldwell dispatched three Magnolia employees to Grand Isle to prepare his personally owned camp for Hurricane Camille, which was approaching the island. Vicknair, Victor McElroy, the plantation overseer, and Isaac Brown, a laborer, reached the island during squally wind and driving rain. They picked up Caldwell's boat from the public dock and then removed air conditioning units from the camp, boarded up the windows and doors, and loaded several packages into the truck. They immediately left the camp and traveled approximately one-half mile on their return trip to the plantation, whereupon Vicknair suffered his fatal attack and died instantly.
Defendants first argue that under R.S. 23:1035 an accident or incident is not compensable unless it arises out of or is incidental to the employer's regular trade, business or occupation, and that Vicknair at the pertinent time was performing an activity which did not constitute part of Magnolia's regular business.
Compensation coverage may still attach even though the employee, at the time of the injury, was not performing the exact duty for which he was primarily hired or a task normally incidental to the regular business of the employer. When an employee is following the direct order of a person in authority to perform a task outside of his normal employment duties for the benefit of his employer or of the superior, and is injured in the course of that work, the injury is usually compensable.
In Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932) a pipefitter, who had been ordered to perform work at the residence of one of the company officials, was held entitled to compensation for an injury which occurred after he had done that work and was returning to the mill.
In Dobson v. Standard Acc. Ins. Co., 228 La. 837, 84 So.2d 210 (1955) an injury sustained by a truckdriver, employed by an oil distributor, while the employee was demolishing a fence around his employer's residence, was held compensable.
In Brown v. Hartford Acc. & Indem. Co., 240 La. 1051, 126 So.2d 768 (1960) the owner and operator of a bookbindery sent a handyman normally employed at the bookbindery to do carpentry work at the owner's apartment building. The employee was injured during the hours he usually worked at the bookbindery. Additionally, he was on the bookbindery's payroll during the period of this work. The court held the owner was estopped from claiming the *750 services were not incidental to the injured employee's duties at the bookbindery.
The rationale underlying the above decisions is that the employer or person in authority has implicit power to enlarge the normal course of the employee's employment by assigning particular tasks or duties. Once the superior exercises this authority, the employee has no practical choice but to perform the assigned task. Our courts cannot condone a rule of law which would hold that the employee's compliance under subtle coercion forfeits compensation coverage. See generally 1 Larson, The Law of Workmen's Compensation § 27.40 (1972).
Defendants, however, citing several cases[1], quote from Section 102 of Malone, Louisiana Workmen's Compensation Law and Practice (1951), that the "Act does not extend to injured employees unless their work is a regular part of the business, trade or occupation of the employer."
The cited cases were concerned either (1) with a claimant (employee or independent contractor) who was not employed in the employer's regular business, but was specially hired to perform a certain task outside of the regular business, or (2) with a determination of the hazardous nature of the employer's business, which is another requirement of R.S. 23:1035. Whether or not Magnolia's business was hazardous is not pertinent in the present case.[2] Also inapplicable are the cases which concern a special employee, not regularly employed by the employer, who is hired to perform a special task.
When, as in the present case, an employer uses his regular employee for a job outside of the employer's regular business, compensation coverage depends upon the facts and circumstances of each case.
Professor Malone discusses the problem in Section 175 as follows:
"Employee Performing Personal Errand for Employer
"An employee who is doing work which is part of his employer's business may be directed by the latter to perform a purely personal errand for the employer or one of his representatives. If he is injured while so doing, is he entitled to compensation? This may appear superficially to present only the question of whether the employee at such a time was acting within the course of his employment, and the problem is usually phrased in these terms by the courts. This, however, is not always a satisfactory way of stating the matter. There can be no question that an employee is within the course of his employment when he is acting pursuant to his employer's orders. The true difficulty lies in the fact that the order relates to something that is not a part of the employer's regular business. Thus, in those jurisdictions where it is *751 not necessary that the employee's work be part of the business of the employer there is no difficulty with this question.
"Where the employee is performing a personal errand for his employer the former's position is a difficult one. If he accedes to his employer's request, he runs the risk that any accident during the performance of the mission will be excluded from compensation coverage. If he refuses, he runs the more serious risk of being discharged for insubordination. Thus he has little free choice in the matter. It is probably compassion for his predicament that has induced courts wherever possible to find that the errand was related in some way to the employer's business. Or, if the employee has completed the errand and is returning to the regular work premises, it may be found that he has resumed his employment in the business. Furthermore, if the errand is of short duration and comes at a time when the employee might otherwise be idly standing by or enjoying a rest or recreation period, it can be appropriately treated as a mere incident of the regular employment. For example, if an employee could cross the street to get a package of cigarettes for himself during a free period without losing his right to compensation, there is no reason why a different result should follow if he were buying cigarettes for his employer pursuant to the latter's request.
"Until recently the Louisiana cases on this problem were few and inconclusive. However, the question was definitely put to rest in 1955 in the case Dobson v. Standard Accident Ins. Co. The employer operated a gasoline service station and had secured compensation insurance covering this occupation. He directed claimant, a service station employee, to demolish a fence on the employer's private premises, and the claimant was injured while so doing. The court held that it was sufficient that the employee was acting purusant to his employer's orders at the time of the accident. The compensation insurer further insisted that this injury was not incurred in the course of a service station operation, which was the only occupation it had insured. In answer the court observed that the insurer undertook to insure against any liability imposed by the statute and could not complain if the activity in which the employee was engaged at the time of the accident is regarded by the court as within the course of claimant's employment in service station work. The rule of the Dobson case has since been affirmed and followed." (Emphasis supplied, footnotes omitted.)
Using this reasoning, we find compensation coverage under the facts and circumstances of the present case. Perhaps we would reach a different result if a corporate officer requested a corporate employee to perform, outside of his regular working hours, a certain job for the personal benefit of the officer, who personally paid additional wages for the special job. In the present case, however, Vicknair followed direct orders issued by the plantation manager, worked with other corporate employees and used a truck and fuel furnished by the corporation. Each employee involved apparently considered this assignment to be part of his regular duties, and each had performed work at the camp before as part of his employment duties. Neither Vicknair nor the overseer received additional wages from the corporation for performing the special assignment, because their regular monthly salary encompassed additional assignments; however, Caldwell did not pay or agree to personally pay them any extra wages. Significantly, the laborer was paid extra wages by the corporation for the work done that day.
Under these circumstances we conclude that Vicknair's attack occurred at a time which constituted working hours and at a place where as part of his normal duties he had been ordered to go by the corporation executive to perform a task for the executive's benefit. We accordingly hold the attack was compensable.
*752 As to proof of the causal relationship between the employment and the attack, the only physician presented testified he was certain, from the co-employee's history of the incident, that Vicknair suffered a severe coronary attack which resulted in his immediate death. The doctor also stated that physical exertion can cause a coronary occlusion, although there are other causes.
Causation, like other elements of a civil case, need only be proved by a preponderance of the evidence. The party assigned the burden of proof has established the requisite preponderance if the evidence, taken as whole, shows that the fact or causation sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
The testimony of medical experts seldom contains unqualified statements of probability or likelihood.[3] Such evidence must be weighed in the light of other credible evidence of a non-medical character, such as a sequence of symptoms or events, in order to judicially determine probability.
The skimpy medical testimony here contained no specific statement as to the probability that work activity caused Vicknair's heart attack. However, the testimony did fairly establish that it is virtually impossible in a specific case to determine how much, if at all, physical exertion contributes to an occlusion, but that physical exertion, tension and excessive worry are factors which can cause, contribute to, or influence the onset of an occlusion.
Vicknair performed physical labor continuously for two hours under pressure of haste and adverse weather conditions just prior to suffering the fatal attack. Furthermore, his wife and daughter testified that he had a lifelong fear of bad weather and was apprehensive about going to Grand Isle in the face of an approaching hurricane.
When a person in apparent good health performs strenuous labor under tension and immediately thereafter suffers a heart attack, and the medical evidence establishes that strenuous work under tension can cause this type of heart attack, the inference arises that the attack is not just a coincidence, but is causally related to the work activities.
The trial judge apparently was satisfied that the numerous factors present in this case, when working together, influenced the onset of Vicknair's attack. We concur that the evidence, taken as a whole, established that it was more probable than not that the exertion, tension and worry, all of which were present at the time and all of which are possible contributing causes of coronary occlusion, precipitated, hastened, aggravated or in some manner played a part in Vicknair's heart attack, which occurred in the course of his employment.
By answer to the appeal, Mrs. Vicknair seeks penalties and attorney's *753 fees for the unreasonable denial of her claim.[4] While we believe the virtually undisputed facts clearly establish Vicknair's entitlement to compensation, we recognize that the language in R.S. 23:1035 and in previous appellate opinions could justify a liability defense against a claim in which the employee was performing a special task for a corporate officer outside the regular business of the corporation. Furthermore, the medical evidence in support of causation was far from overwhelming, and we note that each side subpoenaed medical experts who were not called to testify.
Under the foregoing circumstances we conclude that the defense was presented in good faith and on reasonable grounds.
Finally, defendants contend the award of $45.00 per week was in excess of the statutory amount. R.S. 23:1232 provides that payment of death benefits to the widow alone shall be computed at 32½% of wages. At the beginning of trial, counsel stipulated that Vicknair's wages were $400.00 per month, $300.00 being wages and the balance attributable to a home and utilities furnished by the corporation. Therefore, the award must be reduced to 32½% of Vicknair's weekly wages.[5]
Accordingly, the judgment is amended to decrease the amount of weekly benefits to $32.50. As amended, the judgment is affirmed.
Amended and affirmed.
RICHARD H. GAUTHIER, J. Pro Tem., dissents and assigns reasons.
RICHARD H. GAUTHIER, Judge, Pro Tem. (dissenting).
I respectfully dissent from the majority opinion and decree for I am of the opinion that the plaintiff failed to establish a causal connection between the death of George Vicknair and his employment activities.
In order to receive workmen's compensation benefits the plaintiff must show the existence of a causal connection between the decedent's employment activities and his resulting death from a heart attack.
Our courts have established that the plaintiff must prove this causal connection by a preponderance of evidence as in any other civil case. In discussing what is meant by "preponderance of evidence", the Supreme Court in the case of Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1, said that "speculation, conjecture, near possibility and even unsupported probabilities are not sufficient."
In Bernard v. Louisiana Wildlife & Fisheries Commission, La.App., 152 So.2d 114, the Third Circuit said that such proof must be a reasonable probability, and that mere possibility is not sufficient.
This court in the case of Brown v. Kaiser Aluminum & Chemical Corporation, La. App., 250 So.2d 99, held that plaintiff's right to recover was dependent upon the existence of the causal connection and that in determining this issue "The court must be primarily guided by the testimony of the medical experts."
The only medical evidence in the record was the deposition of Dr. Nicholas S. Musso, a general practitioner and Deputy Coroner of Lafourche Parish. Dr. Musso's testimony reveals that he made no statement confirming a causal connection between Mr. Vicknair's employment activities and the heart attack. He was never asked the specific causal connection question, nor did he testify as to any causal connection between Vicknair's death and his activity.
*754 He ventured no opinion whatsoever except as to the cause of death.
A careful review of his testimony, as well as the entire record, convinces me that the plaintiff failed to prove by a preponderance of the evidence that there was a causal connection between Mr. Vicknair's death and his employment activities. I believe it would be pure conjecture to conclude that Vicknair's physical activities contributed to or accelerated his death without benefit of medical testimony.
NOTES
[1] Defendant cites Lyons v. Pirello, 194 So.2d 147 (La.App. 1st Cir. 1967), in which defendant, a real estate broker, was held liable when the court found he engaged in constructing and remodeling buildings, a hazardous business, and plaintiff was injured during construction; Story v. Globe Indemnity Co., 223 La. 689, 66 So.2d 611 (1953), a direct action against the insurer of a hardware business owner, in which plaintiff (the owner's father-in-law) was killed in the construction of a camp belonging to the owner, the court finding that decedent was never employed in the employer's regular business; Scott v. Young Women's Christian Assn., 263 So.2d 367 (La. App. 4th Cir. 1972), which solely involved a determination as to whether the business of renting rooms on a daily basis was hazardous; Fontenot v. Travelers Ins. Co., 236 So.2d 889 (La.App. 3rd Cir. 1970), in which recovery was denied to a painter, not otherwise employed by defendant, who was injured while painting a farmer's residence; and Stigler v. Bell, 276 So.2d 799 (La.App. 4th Cir. 1973), in which defendant, whose business was managing rental property, employed a painter especially to paint a cabinet at defendant's residence.
[2] When the employer carries insurance, the insurer is estopped from denying liability for an employee's injury, arising "within the scope of the employer's business," on the grounds that the employment was not hazardous. R.S. 23:1166.
[3] As this court stated in Marty v. Western Auto Supply Company, 269 So.2d 583 (La. App. 4th Cir. 1972), quoting from 3 Larson, The Law of Workmen's Compensation, § 80.32, p. 289 (1971):

"The distinction between probability and possibility should not follow too slavishly the witnesses' choice of words, as sometimes happens in respect to medical testimony. A doctor's use of such words as `might', `could', `likely', `possible' and `may have', particularly when coupled with other credible evidence of a non-medical character, such as a sequence of symptoms or events corroborating the opinion, is in most states sufficient to sustain an award. It is a common experience of compensation and personal injury lawyers to find that the more distinguished a medical witness is, the more tentative and qualfied are his statements on the witness stand. He will testify that the sledge-hammer blow on claimant's head might have caused claimant's headache, but hesitates to say positively that this was the only possible cause, and may concede on cross-examination that there could conceivably be other causes. The weight of such testimony, however, should not be too sharply discounted because of the disposition of the highly-trained scientific mind to refrain from unqualified statements or opinions on such matters as causation."
[4] Defendants argued she should have appealed separately, rather than answering the appeal. However, an answer to the appeal is the equivalent to an appeal on the answering party's part from any portion of the judgment rendered against him in favor of the appellant. C.C.P. art. 2133.
[5] If the employee is paid on a monthly basis, his weekly wages are determined by dividing his monthly salary by four. R.S. 23:1021 (11)(b).