637 So.2d 1221 (1994)
Lenis J. HEBERT, Plaintiff-Appellee,
v.
CIGNA, Defendant-Appellant.
No. 93-1400.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1994.
*1222 Roger C. Sellers, Abbeville, for Lenis J. Hebert.
Denis Paul Juge, Metairie, for CIGNA.
Denis Paul Juge, Frank Reynolds Whiteley, III, Metairie, for Insurance Co. of North America.
Michael Gerard Lemoine, Lafayette, for Murphy's Lease and Welding.
Before SAUNDERS, DECUIR and BERTRAND[1], JJ.
SAUNDERS, Judge.
Defendant-appellant, Insurance Company of North America[2] (hereinafter INA), appeals the judgment of the Office of Workers' Compensation, District 4, granting plaintiff-appellee, Lenis J. Hebert (hereinafter HEBERT), workers' compensation benefits, penalties, and attorney's fees. In INA'S response to HEBERT'S initial claim, INA made a third party demand against Gerald and May Libersat who owned the horse that caused HEBERT'S injuries. After rendering the judgment in favor of HEBERT, the hearing officer refused to transfer INA'S cross-claim against the LIBERSATS to a state district court.
INA contends that the hearing officer erred when: it ruled that the insurance policy issued to HEBERT'S employer, Murphy's Lease and Welding Service, Inc. (hereinafter MURPHY'S), by INA covered plaintiff's employer's cattle ranching operations; it found that plaintiff was in the course and scope of his employment with MURPHY'S at the time of the accident; it ruled that INA was arbitrary and capricious in handling HEBERT'S claims; and it denied INA'S request that its cross-claim be transferred to the 15th Judicial District Court.
For the reasons which follow, we affirm in part and reverse in part the hearing officer's ruling and remand with instructions.

FACTS
Plaintiff-appellee, HEBERT, was employed by MURPHY'S as a roustabout for approximately ten (10) years. He was guaranteed fifty (50) hours of work per week at $6.67 per hour. He worked Monday through Friday from 7:00 a.m. to 5:00 p.m. Generally, HEBERT reported to work at 7:00 a.m. and received work assignments from MURPHY'S *1223 foreman, James Baudoin, on a day-to-day basis. HEBERT had no specific duties and was assigned various tasks including truck driving, sweeping, grass cutting, and other similar assignments.
In addition, HEBERT was occasionally assigned to do personal work for Gerald Libersat (hereinafter LIBERSAT) and May Libersat. LIBERSAT and his mother, May Libersat, co-owned the controlling stock in MURPHY'S. LIBERSAT was the manager of MURPHY'S and was responsible for oversight with respect to hiring and firing employees, entertaining and servicing clients, financing, making project bids, and generally running the business on a day-to-day basis. HEBERT'S duties for the LIBERSATS also included mowing grass at LIBERSAT'S personal home and at his mother's home. HEBERT was also assigned work at LIBERSAT'S cattle operation located on property near MURPHY'S.
On March 12, 1990, LIBERSAT talked with James Boudoin to determine if HEBERT would be available to rope an orphaned calf from the pasture. That same morning, Boudoin and HEBERT discussed LIBERSAT'S order. After lunch, HEBERT left in a MURPHY'S shop truck and went to the pasture where the LIBERSAT cows were located. He retrieved a quarter horse located on the farm and proceeded to rope the calf. While performing the task, the horse stumbled and threw HEBERT. The horse fell on HEBERT rendering him a paraplegic. A few days after the accident, MURPHY'S issued a letter and an Employer's First Report of Injury Form to its workers' compensation carrier, INA, explaining the facts and circumstances surrounding the accident.
Generally, from the date of the accident to approximately September of 1990, INA paid workers' compensation and medical benefits to HEBERT. Problems arose in September of 1990 with respect to requests made by HEBERT to repair, remodel, or rebuild his home to make it wheelchair accessible and to modify his car to provide manual hand controls. On January 15, 1991, when medical payments were becoming delinquent and modifications to HEBERT'S home and car were not undertaken, HEBERT filed a workers' compensation claim against INA and MURPHY'S.
On February 5, 1991, INA filed an answer denying the claims made by HEBERT for benefits and medical care and denying that it was required to make the requested modifications to HEBERT'S home and car. Subsequent to this filing, INA issued a letter to the Social Security Administration stating that HEBERT was outside the course and scope of his employment at the time of his disabling accident, and therefore, INA was terminating benefits as of December 1, 1991. HEBERT subsequently amended his claim on January 27, 1992, seeking penalties and attorney's fees alleging that INA'S termination of benefits was arbitrary and capricious.
On September 10, 1992, a trial on the merits was conducted to determine whether HEBERT was in the course and scope of his employment at MURPHY'S at the time of his accident and whether INA was arbitrary and capricious in handling his claims. A stipulation was entered into on the record by all parties that if the hearing officer found HEBERT to be in the course and scope of his employment at MURPHY'S at the time of the accident, INA was obligated to provide workers' compensation benefits to HEBERT.
The hearing officer found that HEBERT was in the course and scope of his employment with MURPHY'S at the time of the accident. The hearing officer also ruled that INA was arbitrary and capricious in failing to reasonably controvert HEBERT'S claims and unilaterally terminating workers' compensation benefits on December 1, 1991. HEBERT was awarded attorney's fees in the amount of $10,000.

I. Issues Presented
1) Whether the insurance policy issued by INA to MURPHY'S covered LIBERSAT'S cattle ranching operations. 2) Whether HEBERT was in the course and scope of his employment with MURPHY'S at the time of the accident. 3) Whether INA was arbitrary and capricious in handling HEBERT'S claims. 4) Whether INA'S request that its *1224 cross-claim be transferred to the District Court should be granted.
This court pretermits the first issue raised by appellant because we find that the record supports the hearing officer's finding that at the time of the accident HEBERT was in the course and scope of his employment with MURPHY'S. Consequently, the first issue is moot.

II. Law and ArgumentIssue I
Whether HEBERT suffered his injury during the course and scope of his employment at MURPHY'S.
To establish that a claimant is entitled to workers' compensation benefits, claimant must prove by a preponderance of the evidence that an accident occurred during the course and scope of his employment; the accident caused his injuries; and the injury caused his disability. Kennedy v. Security Indus. Ins. Co., 623 So.2d 174 (La. App. 1st Cir.), writ denied, 629 So.2d 389 (La.1993); reconsideration denied, 630 So.2d 251 (La.1993). It is undisputed in this case that HEBERT suffered a disabling injury that was caused by an accident in which he fell from a horse as he attempted to rope a calf.
At trial the parties entered into a stipulation that INA was liable for HEBERT'S claims as workers' compensation insurer of MURPHY'S, if the hearing officer found that the accident arose out of and in the course and scope of HEBERT'S employment with MURPHY'S. Therefore, the principle issue on review before this court is whether the facts and law support the hearing officer's conclusion that HEBERT was in the course and scope of his employment with MURPHY'S at the time of the accident.
INA argues it is not liable for injuries sustained while HEBERT performed personal errands and labor services relating to LIBERSAT'S cattle operations because those activities are not in the course and scope of HEBERT'S employment with MURPHY'S. This court, however, recognizes the problems faced by workers in such a situation. As Professor Malone explained:
"Where the employee is performing a personal errand for his employer the former's position is a difficult one. If he accedes to his employer's request, he runs the risk that any accident during the performance of the mission will be excluded from compensation coverage. If he refuses, he runs the more serious risk of being discharged for insubordination. Thus he has little free choice in the matter."
Wex S. Malone & H. Alston Johnson, III, Louisiana Civil Law Treatise V. 13, Workers' Compensation Law & Practice § 173, at 373 (1st ed. 1980).
Recognizing the inevitable fate of HEBERT and other employees similarly situated, and the legislative intent underlying workers' compensation statutes, Louisiana Courts have ruled accordingly in situations outlined by Malone. More specifically, in addressing the issue of whether an employee injured while performing a personal errand or personal labor services for his employer is performing services arising out of his employment, the Louisiana Supreme Court held:
"Services `arise out of' and are `incidental to' an employment, whenever the employment calls for just services. And whenever the employer calls upon the employee to render any particular service, he, at least (that is to say, the employer himself), is in no position any longer to deny that the services thus requested arise out of and are incidental to the employment. Otherwise, by what right has the employee been called upon to perform them?

"Accordingly, the question whether or not the services being rendered by the employee, at the time when he is injured, arise out of and are incidental to his employment, cannot be raised when the employee has been given special instructions to perform the particular services in which he was engaged at the time he was injured, but only when the employee has undertaken such service on his own initiative as being actually or presumably within the scope of his duties." *1225 Dobson v. Standard Accident Insurance Company, 228 La. 837, 84 So.2d 210, 212 (1955) (emphasis added).
In more recent appellate cases, Louisiana Courts have clearly held that a work assignment or task out of which an injury causing accident occurs does not have to arise out of or be incidental to the regular business of the employer.
"Compensation coverage may still attach even though the employee, at the time of the injury, was not performing the exact duty for which he was primarily hired or a task normally incidental to the regular business of the employer. When an employee is following the direct order of a person in authority to perform a task outside of his normal employment duties for the benefit of his employer or of the superior, and is injured in the course of that work, the injury is usually compensable.
* * * * * *
"The rationale underlying the above decisions is that the employer or person in authority has implicit power to enlarge the normal course of the employee's employment by assigning particular tasks or duties. Once the superior exercises this authority, the employee has no practical choice but perform the assigned task. Our courts cannot condone a rule of law which would hold that the employee's compliance under subtle coercion forfeits compensation coverage. See generally 1 Larson, The Law of Workmen's Compensation § 27.40 (1972)."
Vicknair v. Southern Farm Bureau Casualty Insurance Company, 292 So.2d 747, 749-50 (La.App. 4th Cir.1974).
The general rationale and rule formulated in Vicknair, however, is tempered. Our fellow jurists of the 4th Circuit, after finding that the employee's accident arose out of or in the course and scope of his employment, reasoned:
"Perhaps we would reach a different result if a corporate officer requested a corporate employee to perform, outside of his regular working hours, a certain job for the personal benefit of the officer, who personally paid additional wages for the special job outline."
Id. at 751.
The Vicknair holding has been specifically cited and followed by this court in two recent cases. In Freeman v. Brown's Furniture of Bunkie, 527 So.2d 544, 546 (La.App. 3d Cir. 1988), this court, using the same rationale as the Vicknair court, found that the claimant, Freeman, was in the course and scope of his employment when he rendered personal services for his immediate supervisor and employer, Fontenot. In that case the court noted:
"In addition to the duties plaintiff performed on the Brown's premises, he [(Freeman)] was assigned by Brown's to render personal services for Fontenot. The duties performed by plaintiff for Fontenot personally generally consisted of yard work and general handy work."
Id. Following the rationale of Vicknair, this court recognized in support of its holding that Freeman "could have been dismissed by Brown's at any time through Fontenot as he was the managing officer and part-owner of the Furniture company." Id.
In support of its holding in Freeman, this court noted that Freeman was paid by Brown's as a regular employee; he was provided with a uniform and considered himself a Brown's employee, rather than a Fontenot employee. In addition, this court recognized that the services performed by Freeman were a requirement of his employment with Brown's and that his work at Brown's always took precedent over his work at Fontenot's home. In fact, Brown's employees testified that they had the authority to countermand Fontenot's orders to perform personal work if Freeman was needed at the store. Brown's was always in direct control of Freeman's activities. Finally, this court noted that the accident in which Freeman was injured occurred during Brown's regular hours.
While Freeman's injuries were found compensable, this court, as did the court in the Vicknair case, tempered its ruling. It suggested that if Freeman's injury had occurred outside his regular hours of employment with Brown's Furniture, at a time in which Fontenot *1226 was paying him cash out of his own pocket, then his injury may not have been compensable. Id. at 547.
In Lewis v. Teacher's Pet, Inc., 621 So.2d 867, 870 (La.App. 3d Cir.), writ denied, 629 So.2d 1140 (La.1993), we again addressed a workers' compensation claim when an employee was injured while doing personal work for his employer or an officer thereof. In that case, this court specifically held that "Louisiana law is clear that it is irrelevant whether the services being rendered by [claimant] at the time of his injury arise out of or are incidental to his employment...."
In Lewis the claimant performed repairs and general maintenance, including changing the roof of the store building owned by Teachers Pet, Inc., an office supply store. After completing the roof work, the owners of Teachers Pet, Inc. instructed claimant and his co-worker to perform other odd jobs at their personal homes and on property they owned in a nearby town. While cutting limbs, claimant fell to the ground and broke his wrists. In finding that claimant was an employee of Teachers Pet, Inc. and that his injuries were compensable, this court noted that the owners gave claimant approval to do the work, designated the job sites, and controlled the work done on a daily basis through the corporation's officers. The officers had complete control over claimant and could have dismissed him at anytime, if they were not satisfied with his job performance. In addition, the Lewis court found that all of the materials for the work, including some of the tools, were provided by the owners. Finally, this court noted that the claimant was paid out of the Teachers Pet payroll and not the personal account of its owners or corporate officers.
The record in the case before us overwhelmingly supports the hearing officer's findings. In sum, the record indicates that HEBERT was employed by MURPHY'S as a roustabout. He had no specific duties except to report to his supervisor at 7:00 a.m. and receive his work assignments. His work included cleaning, sweeping, truck driving, and other similar tasks around the shop or at MURPHY'S work sites outside of the shop. In addition, he occasionally was required, as part of his job, to assist LIBERSAT with his cattle operation.
While it is clear that HEBERT was not performing an assignment at MURPHY'S principal place of business or at a project site at the time of the accident, he was nonetheless performing a task required of him in his regular employment at MURPHY'S. He performed that assignment during regular working hours and was paid for that work by his regular employer, MURPHY'S, from its business account. He even went to the pasture to rope the calf in a MURPHY'S truck. HEBERT was doing work that his employer ordered him to do. LIBERSAT and his foreman, Baudoin, had the power to assign work tasks and HEBERT was reasonable and correct in believing that if he failed to perform the regular MURPHY'S work, as well as the personal work at the LIBERSAT home or farm, he could be discharged. The record indicates that MURPHY'S indirectly benefited from HEBERT'S occasional work with LIBERSAT'S cattle in that LIBERSAT'S time was freed up so that he could attend to more pressing business matters associated with MURPHY'S operations. It is also clear from the record that HEBERT'S work in LIBERSAT'S cattle operations was always subordinated to his duties at MURPHY'S.
In accordance with Louisiana jurisprudence, we hold that when 1) a regular employee is requested by his employer to perform a job or errand not within the course and scope of his regular employment or the regular business of his employer, 2) during regular working hours, 3) while being paid by his regular employer, and 4) the employee is injured as a result of that work, workers' compensation is due. In view of the current jurisprudence and the facts established at trial, we find that the hearing officer did not err in finding that HEBERT was injured while in the course and scope of his employment with MURPHY'S.
"Jurisprudence clearly establishes that in workers' compensation cases, the appropriate standard of review to be applied by appellate courts is the `manifest error-clearly wrong' standard." Alexander v. Pellerin *1227 Marble & Granite, 630 So.2d 706, 710 (La. 1994) (citations omitted). "The same standard of appellate review applicable to actual findings of district courts is also applicable to the factual findings of an administrative body or hearing officer." Id. That standard prohibits an appellate court from setting aside the lower court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of fact should not be disturbed upon review, even though we may feel that our own evaluations and inferences are as reasonable. Rosell v. Esco, 549 So.2d 840, 844 (La.1989).
"The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.
"When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong."
Id. (citations omitted).
We have reviewed the record in great detail and find that the evidence presented by HEBERT more than satisfies the requisite burden of proof and the hearing officer's findings of fact and final judgment.

III. Law and ArgumentIssue II
Whether INA was arbitrary and capricious in handling HEBERT'S claims.
The penalty provisions of LSAR.S. 23:1201.2 are invoked if the action of the employer or his insurer denying payment for medical expenses and workers' compensation is found to have been arbitrary, capricious, or without probable cause. "The employee's right to such benefits will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that medical expenses and compensation benefits were not due the employee." Crowley v. City of Lafayette, 602 So.2d 40, 46 (La.App. 3d Cir.), writ granted, 601 So.2d 663 (La.1992); reversed in part, 609 So.2d 199 (La.1993) (citing Guidry v. United Furniture Distributors, 544 So.2d 100 (La.App. 3d Cir. 1989)). "The purpose of the penalty provision of this statute is to discourage an attitude of indifference toward the injured employee." Spinks v. Dept. Of Health and Human Res, 591 So.2d 423, 427 (La.App. 3d Cir.1991), writ granted in part, 595 So.2d 648 (La.1992), on remand, 605 So. 1384 (La.App. 3d Cir.1992) (citing Alexander v. Dept. of Culture, etc., 410 So.2d 1286 (La.App. 3d Cir.1982). A determination of whether a defendant should be cast with penalties and attorney's fees is essentially a question of fact. "A hearing officer has great discretion in the award of attorney's fees and will not be disturbed absent manifest error." Hubert Dietz v. Guichard Drilling Co., 626 So.2d 79, 83 (La.App. 3d Cir.1993).
The law and the facts in this case do not support INA'S contention that they had a reasonable basis for believing that workers' compensation benefits were not due HEBERT: 1) there were no significant factual disputes at trial; the testimony was consistent and uncontroverted by INA and 2) a review of current Louisiana jurisprudence in this area clearly indicates that benefits were *1228 due HEBERT. Indeed, the record reveals that INA requested and received a brief from its attorneys addressing the issue of coverage when an employee is injured while performing personal errands for his employer. That opinion cited specific cases which clearly established that INA was obligated to pay HEBERT workers' compensation under its policy; INA chose to disregard the clear, concise, and well-settled law in this area. We find strong support for the hearing officer's holding that INA did not have a reasonable basis for believing that workers' compensation and medical benefits were not due HEBERT.
We particularly find that INA was arbitrary and capricious in the manner in which INA handled HEBERT'S request for the remodeling or reconstruction of his home. The record reveals that INA egregiously handled this portion of HEBERT'S claim. INA sent various representatives to HEBERT who promised him that it would remodel or reconstruct his home to make it wheelchair accessible. Evidence at trial indicates that at INA'S initiative, contractors visited the home to estimate the costs of the reconstruction. Despite these earlier representations made by INA, it later claimed that it was not obligated under the law and facts of the case to make the modifications to either his home or his car. Their misunderstanding of the law did nothing more than delay and unnecessarily frustrate HEBERT'S attempt to reasonably settle his claims. We find ample support for the hearing officer's conclusion that INA was arbitrary and capricious. In view of the law and uncontroverted facts, we find that INA was not reasonable in believing that workers' compensation benefits were not due HEBERT.
While we find INA was arbitrary and capricious in handling HEBERT'S claim and agree with the award of penalties and attorney's fees, we do not include as part of our support thereof INA'S unilateral decision to terminate HEBERT'S benefits when it offset their payments of compensation by the Social Security disability benefits received by HEBERT. Generally, an employer or his insurer may reduce payments by offset of Social Security disability benefits from the date of judicial demand and receiving judicial approval for doing so. Necaise v. A.C. Co. of South Louisiana, Inc., 499 So.2d 1074 (La. App. 3d Cir.1986). The Necaise holding applies, however, to cases where the worker's compensation benefits are judicially owed to the employee under a court judgment. See, Bellard v. South Louisiana Contractors, 563 So.2d 1319 (La.App. 3d Cir.1990).
In cases where an employer or his insurer makes voluntary compensation payments to an injured employee, i.e. payments never judicially fixed or made pursuant to a Workers' Compensation recommendation accepted by both parties, the employer or his insurer is at liberty to unilaterally claim the offset in accordance with La.R.S. 23:1225. Bellard, supra at 1321. "If plaintiff [or the injured employee] disputes defendant's right to this offset, plaintiff must first submit the dispute to the OWC [(Office of Workers' Compensation)] to obtain its recommendation." Id. While we find that the unilateral termination of benefits under the aforementioned facts is not per se arbitrary and capricious, a court should closely scrutinize a plaintiff's claim of arbitrary and capricious action on the part of his employer or his insurer in cases where such a unilateral offset is taken. The court must insure that a disabled employee is not forced to endure a period of time when he is not receiving his due portion of benefits simply because the Social Security Administration and the employer or his insurer failed to properly coordinate the termination and activation of their respective offsets. See, Necaise, 499 So.2d 1074, 1076. Additionally, as in every claim, a court should examine the facts and law under which an employer or his insurer terminates or reduces payments to determine if it was arbitrary or capricious on other grounds.
The record reveals that INA did not act arbitrarily and capriciously in taking its offset under La.R.S. 23:1225. While INA did unilaterally terminate HEBERT'S benefits, the Social Security disability benefits received by HEBERT immediately followed INA'S termination such that he had no interruption in payments. INA acted within its rights pursuant to the statute.
*1229 Finally, HEBERT argues in his brief that he should be awarded an increase in attorney's fees for the defense of this appeal. This request for additional attorney's fees is not properly before this court and will not be considered since HEBERT did not appeal nor answer the appeal of the defendant-appellant as required by LSA-C.C.P. art. 2133.[3]

IV. Law and ArgumentIssue III
Whether INA'S cross-claim should be transferred to the state District Court.
In response to HEBERT'S workers' compensation claims, INA alleged in its answer that if INA was found obligated to pay HEBERT'S claims, it was entitled to indemnification from Gerald and May Libersat whose horse allegedly tortiously injured HEBERT. INA requested that its cross-claim against the Libersats be transferred to a court of proper jurisdiction, namely the 15th Judicial District Court.
We find that the hearing officer erred in denying INA's request that its cross-claim against the Libersats be transferred. The Office of Workers' Compensation only has original jurisdiction in claims arising from workers' compensation claims. The cross-claim raised by INA arises out of a general tort claim, therefore, the Office of Workers' Compensation has no jurisdiction on that issue and the cross-claim should have been transferred to a court of proper jurisdiction. Accordingly, we reverse that portion of the hearing officer's ruling and remand this case and order that the hearing officer transfer this outstanding claim by INA against the Libersats to the appropriate state district court.

Conclusion
For the foregoing reasons, the judgment of the hearing officer is affirmed in part, reversed in part, and remanded with instructions.
Costs of this appeal are assessed to defendant-appellant, Insurance Company of North America.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED WITH INSTRUCTIONS.
NOTES
[1] Judge Lucien C. Bertrand, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[2] Plaintiff-appellee incorrectly named CIGNA as defendant in his initial claim.
[3] "A. An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded...." LSA-C.C.P. art. 2133.