689 So.2d 691 (1997)
Barbara LACHNEY, Plaintiff-Appellee,
v.
JOHNSON & JOHNSON/ORTHO BIOTECH, Defendant-Appellant.
No. 96-724.
Court of Appeal of Louisiana, Third Circuit.
February 19, 1997.
Writ Denied May 1, 1997.
*692 Jay Anthony Pucheu, Marksville, Chris J. Roy, Jr., Alexandria, for Barbara Lachney.
Susan Nunez Belsom, Monroe, for Johnson & Johnson/Ortho Biotech.
Before DOUCET, C.J., and THIBODEAUX, SAUNDERS, DECUIR and BABINEAUX[*], JJ.
DECUIR, Judge.
This is an appeal from a judgment of an Office of Workers' Compensation Hearing Officer granting claimant, Barbara Lachney, workers' compensation benefits for a period during which she received employer-funded short-term disability benefits from her employer, Johnson & Johnson/Ortho Biotech. We reverse.

FACTS
This suit arose as a result of an automobile accident. On April 20, 1995, Lachney, a drug sales representative for Johnson & Johnson, was injured when her vehicle was rear-ended by a third party not involved in this suit. It is undisputed that the accident occurred within the course and scope of Lachney's employment.
Johnson & Johnson maintained and completely funded a disability policy for its employees. Employees made no contributions to the plan. Under the policy, Lachney received eight weeks of her full average weekly wage of $1,826.92. At the end of eight weeks she began receiving seventy five (75%) percent of that amount for a period of eighteen weeks. As soon as the twenty-six weeks of employer-funded disability benefits ended, Johnson & Johnson instituted temporary total disability benefits at the maximum weekly rate of $323.00.
On September 19, 1995, thirty days before her short-term disability benefits ended, Lachney filed a disputed claim for worker's compensation benefits. Johnson & Johnson answered this claim on October 21, 1995, asserting its entitlement to a credit for short-term benefits voluntarily paid under the disability plan.
The hearing officer found that Johnson & Johnson was not entitled to a credit against indemnity benefits until the date of judicial demand. Therefore, the hearing officer awarded Lachney benefits for the period commencing with her accident until October 21, 1995, when Johnson & Johnson began paying weekly indemnity benefits. In addition, the hearing officer awarded penalties and attorney fees relating to some medical bills paid outside the sixty day time limit.
Johnson & Johnson lodged this appeal contesting the hearing officer's judgment regarding its entitlement to credit for short-term disability benefits previously paid. Lachney appeals the hearing officer's failure to award penalties and attorney fees for unpaid indemnity benefits during the period from the accident until October 21, 1995.

ENTITLEMENT TO OFFSET
Johnson & Johnson alleges that the hearing officer erred in her interpretation of La.R.S. 23:1225(C), Louisiana's wage-loss benefit coordination law. The crux of Johnson & Johnson's argument is that the hearing officer improperly found that it was not entitled to an offset until judicial demand. We agree.
La.R.S. 23:1225(C)(1) states that:
*693 C.(1) If an employee receives remuneration from:
(a) Benefits under the Louisiana Worker's Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other worker's compensation benefits,
then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from subparagraphs (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of the average weekly wage.
Louisiana's Supreme Court interpreted this provision in Garrett v. Seventh Ward Hosp., 95-0017 (La.9/22/95); 660 So.2d 841. The Court stated:
The wage-loss coordination provision of Section 1225 C(1) was "designed to add all the benefits not funded by the employee; and, if the combined benefits exceeded 66 2/3 percent of the employee's average weekly wage, the employer would be given an offset of the excess against the obligation to pay workers' compensation benefits." Dennis P. Juge, Louisiana Workers' Compensation § 12:5 (1995). Section 1225 C(1) thus provides Louisiana employers with an offset against their worker's compensation obligation of benefits provided by different employer based sources and establishes a sort of state ceiling of benefits to which an employee is entitled. H. Alston Johnson, Bound in Shallows and Miseries: The 1983 Amendments to the Workers' Compensation Statute, 44 La. L.Rev. 669, 705 (1984); Wex S. Malone & H. Alston Johnson III, 13 Louisiana Civil Law Treatise-Workers Compensation Law and Practice § 289 (3d ed.1994).
Garrett, 660 So.2d at 845.
The Court also discussed the purpose of wage-loss benefit coordination laws as follows:
Wage-loss benefit coordination laws are designed to achieve a dual purpose: (1) to assure, when an employee suffers a wage loss because of disability, unemployment, advanced age or death, that a certain minimum portion of the employee's actual wages is continued or, in the case of death, that the employee's dependents receive some degree of recovery of lost support; and (2) to preclude an employee from contemporaneously collecting duplicative wage-loss benefits under different parts of the overall system of employer-based protection against loss of wages. Benefit coordination laws are based on the premise that an employee experiencing a period of wage loss should not be permitted to receive duplicative benefits from different parts of the overall system provided by the employer and thereby recover more than the amount of his or her actual wages. The theory is that an employee experiencing only one wage loss should be entitled to receive only one wage-loss benefit from the employer. Benefit coordination laws thus avoid duplicative benefits collected from the employer and prevent social legislation from becoming a "grab bag" of assorted, unrelated wage-loss benefits. 4 Arthur Larson, Worker's Compensation § 97.10 (1995).
Garrett, 660 So.2d at 843.
Admittedly, the supreme court's opinion in Garrett focused on whether La.R.S. 23:1225(C)(1)(c) applied to social security disability benefits. However, the court's opinion clearly indicates that there is no question as to the provisions applicability to voluntary employer-funded disability plans. In addition, Justice Calogero's impassioned dissent to the majority's decision in Garrett that La.R.S. 1225(C)(1)(c) applied to social security disability benefits, addressed the legislature's intent as to private disability plans as follows:
To me, it is evident that the Legislature only intended this offset to apply to private disability plans funded or supported by an employer, and not benefits available under the federal Social Security program. This *694 interpretation of the statute is supported by H. Alston Johnson, III, author of La. Civil Law Treatise, Vol. 13, Workers' Compensation Law and Practice, § 289 (3d ed.1994), who explains that the offset provision of La.R.S. 23:1225 C(1)(c) only applies to private disability plans. Johnson explains the effect of Section 1225's amendments, limiting offsets to remuneration from worker's compensation, old-age insurance benefits under social security to the extent not funded by the employee, disability benefits under a private plan in the proportion funded by the employer, and any other workers' compensation benefits. See also H. Alston Johnson, Bound in Shallows and Miseries: The 1983 Amendment to the Workers' Compensation Statute, 44 La.L.Rev. 669, 705 (1984).
Garrett, 660 So.2d at 848.
While Justice Calogero did not prevail on the issue of the provision's exclusive applicability to private disability plans, it is clear that the statute was intended to cover plans such as the one before us.
Accordingly, we find that Johnson & Johnson was entitled to an offset under the language of La.R.S. 23:1225(C)(1)(c). We now turn to the central issue in this case.
Lachney argues adamantly that Johnson & Johnson has thrown up the "red herring" of her double recovery to distract this court from the fact that it was required to make judicial demand in order to obtain its offset. We are more of the opinion that Lachney has thrown up the "red herring" of a judicial demand requirement to distract us from the reality of her double recovery. However, in the spirit of thorough investigation we will attempt to separate fact from fiction in both instances.
Turning first to Lachney's double recovery. As previously discussed, the supreme court in Garrett indicated that one of the purposes of wage-loss benefit coordination laws is to avoid duplicative benefits to the employee. Garrett, 660 So.2d 841. It is not intended under our law for an employee to be compensated doubly for the same element of damages. Gagnard v. Baldridge, 612 So.2d 732 (La.1993). Double recovery equates to exemplary or punitive damages, which under Louisiana law are prohibited unless expressly authorized by statute. International Harvester Credit v. Seale, 518 So.2d 1039 (La. 1988). This principle is so important that the court in Gagnard, faced with the possibility of a double recovery due to the employer's tort liability insurer's failure to appeal, applied an offset against workers' compensation benefits despite having found that the offset should properly be applied to the tort claim. Gagnard, 612 So.2d 732.
We now address Lachney's argument that Johnson & Johnson was not entitled to an offset until it made judicial demand. Lachney argues that our opinion in Necaise v. A.C. Co. of South Louisiana, Inc., 499 So.2d 1074 (La.App. 3 Cir.1986) and a "legion" of uncited cases stand for the proposition that no credit for indemnity benefits exists until the employer makes judicial demand and receives judicial approval of the offset. We are constrained to disagree.
The Necaise holding applies to cases where the worker's compensation benefits are judicially owed to the employee under a court judgment. Hebert v. CIGNA, 93-1400 (La.App. 3 Cir. 5/25/94); 637 So.2d 1221; Bellard v. South Louisiana Contractors, 563 So.2d 1319 (La.App. 3 Cir.1990). "In cases where an employer or his insurer make voluntary compensation payments to an injured employee, i.e. payments never judicially fixed or made pursuant to a Workers' Compensation recommendation accepted by both parties, the employer or his insurer is at liberty to unilaterally claim the offset in accordance with La.R.S. 23:1225." Hebert, 637 So.2d at 1228, citing Bellard, 563 So.2d 1319. If the claimant disputes the defendant's right to this offset, the plaintiff must seek a recommendation from the Office of Workers' Compensation. Id.
In the present case, Johnson & Johnson provided a very generous disability plan for Lachney well beyond the amount to which she was entitled under La.R.S. 23:1225. In response to this generosity, Lachney seeks to obtain more than twice the recovery to which she is otherwise entitled. Such action cannot be condoned by this court.
*695 Accordingly, we find that the hearing officer erred as a matter of law in finding that Johnson & Johnson was not entitled to an offset for disability benefits paid through its employer-funded disability plan. Furthermore, we find that Lachney's assignment of error seeking penalties and attorney fees for nonpayment of indemnity benefits is without merit.
For the foregoing reasons, the judgment of the Office of Workers' Compensation hearing officer is reversed insofar as it grants Barbara Lachney workers' compensation benefits from the date of the accident through October 20, 1995. In all other respects the judgment of the hearing officer is affirmed. All costs of this appeal are taxed to claimant, Barbara Lachney.
REVERSED IN PART; AFFIRMED IN PART.
THIBODEAUX, J., dissents with reasons.
THIBODEAUX, Judge, dissenting.
Hebert v. CIGNA, 93-1400 (La.App. 3 Cir. 5/25/94); 637 So.2d 1221, Bellard v. South Louisiana Contractors, 563 So.2d 1319 (La. App. 3 Cir.1990), Duke v. Rapides Senior Citizens Center, 94-621 (La.App. 3 Cir. 12/7/94); 647 So.2d 648, writ denied, 95-0055 (La.3/17/95); 651 So.2d 268, and Wiley v. Louisiana Hoop Company, Inc., 94-46 (La. App. 3 Cir. 10/5/94); 643 So.2d 910, writ denied, 94-2684 (La.1/6/95); 648 So.2d 925 all stand for the proposition that if an employer makes voluntary workers' compensation payments to an injured employee (payments that are never judicially fixed or made pursuant to a workers' compensation judgment), then the employer or insurer may unilaterally claim an offset under La.R.S. 23:1225(C). The majority cites Hebert and Bellard but neither discusses nor applies these cases. Hebert and Bellard have nothing to do with the voluntary payments of disability benefits under a private employer-funded disability plan. It appears that the majority is now extending these cases to say that the voluntary payment of benefits under a private disability plan may permit an employer or insurer to unilaterally assert an offset under La.R.S. 23:1225(C). Our circuit has never gone so far afield to say this. To now do so is just simply wrong and inconsistent with the intendment of the statute and prior jurisprudence.
The focus on the entitlement to an offset is not the issue. The question is not the propriety or availability of the offset; rather, the issue which the majority never focuses on is when the offset permitted by La.R.S. 23:1225(C) may be taken. The majority correctly observes that these privately-funded disability plans fall under La.R.S. 23:1225(C)(1)(c). I agree. Garrett v. Seventh Ward Hospital, 95-0017 (La.9/22/95); 660 So.2d 841 settled that. The majority further observes that the employer is not entitled to double recovery. I agree. However, I do not agree that the employer in this case may unilaterally take an offset against workers' compensation benefits. It appears that the basis for this conclusion is that the employer voluntarily made payments under its private disability plan and, because of these voluntary payments, is automatically entitled to an offset. I disagree.
The question is not whether the employer provided "a very generous disability plan" for its employees. The majority seems persuaded by this notion. It also appears to be persuaded by the fact that the employee would get a double recovery if the judgment of the hearing officer were affirmed. That may be so. However, it is not the fault of the employee who is properly asserting her rights under the Louisiana Workers' Compensation Law. The blame ought to be laid at the feet of the insurer in the manner in which it dealt with this compensation claim.
For example, the adjuster handling this claim did not determine whether or not Ms. Lachney was being paid a salary in lieu of compensation or whether she was receiving disability benefits under a plan funded by the employer. Although the employer advised the insurer that it was a short-term disability plan, the adjuster was laboring under the erroneous conclusion that this was salary in lieu of compensation benefits. She testified that she never consulted the Louisiana Workers' Compensation Act to determine whether or not Ms. Lachney was entitled to benefits during the time she was receiving *696 short-term disability plans. She also indicated that she never tendered workers' compensation benefits to Ms. Lachney even though her supervisor later advised her that the claim "seemed to be compensable." Furthermore, after finally receiving information that Ms. Lachney was being paid under a short-term disability plan and that temporary total disability benefits under the Workers' Compensation Law weren't being paid, the insurer still did not voluntarily pay workers' compensation benefits until the end of the period covered by the private disability plan. Moreover, the adjuster admitted that there was no dispute regarding the compensability of the claim and the appropriate weekly indemnity rating.
This whole fiasco could have been avoided if the insurer had made a reasonable analysis of this claim. The insurer knew or should have known the following:
1) there was no dispute regarding the compensability of the accident;
2) the payments of this short-term disability benefits under the employer-funded plan could be used as a credit under "Disability Benefits Plans," pursuant to La.R.S. 23:1225(C)(1)(c). Garrett supports this idea.
3) voluntary payment of workers' compensation benefits would entitle it to undertake unilateral action.
If workers' compensation payments were voluntarily begun as of the date of the accident, then using Garrett, Hebert, Bellard, and Duke, the insurer could have easily ascertained that it was entitled to a unilateral offset. For whatever reason, it did not do so and is now crying double recovery. Essentially, the insurer desires that we cover its mistakes. I decline to do so. It should have simply tendered the workers' compensation disability benefits to Ms. Lachney, then used the payments to which she was entitled under the short-term disability plans to offset these benefits. By using this methodology, the insurer could have availed itself of the offset and Ms. Lachney would have been definitely excluded from a double recovery. Instead, the insurer simply dropped the ball.
For the foregoing reasons, and primarily because of the unauthorized extension of the law of our circuit, I respectfully dissent.
NOTES
[*] Honorable Allen M. Babineaux, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.