720 So.2d 442 (1998)
Nathan HOLDEN, Jr., Plaintiff-Appellant,
v.
INTERNATIONAL PAPER COMPANY, Defendant-Appellee.
No. 31104-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1998.
*443 Whitehead Law Offices by Charles R. Whitehead, Jr., Natchitoches, for Plaintiff-Appellant.
Mayer, Smith & Roberts by Dalton Roberts Ross, Shreveport, for Defendant-Appellee.
Before NORRIS, WILLIAMS and CARAWAY, JJ.
CARAWAY, Judge.
Employee appeals three rulings of the worker's compensation judge concerning the grant of supplemental earnings benefits, the allowance of a credit in favor of the employer for its payments of disability benefits under a private benefit plan, and the denial of attorney's fees. Finding the rulings to be correct, we affirm.

Facts
The plaintiff, Nathan Holden, Jr., worked in the wood yard area of the pulp mill of International Paper Company ("IP") in Mansfield. Holden was injured on March 29, 1996 during the course and scope of his employment with IP when he experienced a sharp pain in his neck while reaching to clean a screen used in the processing of wood chips for the mill. Holden did not report the accident as having occurred on the job until after surgery was performed on May 21, 1996 for two herniated cervical discs. Although Holden's condition prevented him from working after March 29, Holden stated that he did not realize that the pain he was suffering was work-related. Initial diagnoses from Holden's doctors ranged from arthritis to a stroke. He finally received an accurate diagnosis from Dr. Carl Goodman who informed him that he needed neck surgery for the herniated discs. Dr. Goodman also concluded that Holden's problem was work-related.
With this information, on May 22, 1996, Holden's wife went to IP to request papers to make a worker's compensation claim for her husband. After an investigation by IP, which included interviewing Holden, the claim was denied for several reasons and this suit followed.
At the completion of the trial, the worker's compensation judge ("WCJ") found that the plaintiff was temporarily totally disabled from March 29, 1996 until December 13, 1996, and that supplemental earnings benefits applied thereafter. Holden's average weekly wages at the time of the injury were stipulated at $753.25, which gave him the maximum worker's compensation rate of $330.00 per week for the entire period of his disability. However, based upon IP's claim for offset, the trial court allowed a 100% credit for all disability benefits that Holden had drawn under an employer-funded disability plan. The trial court found that these short term and long term disability payments were fringe benefits. Finally, the WCJ rejected Holden's claim for attorney's fees while awarding penalties of $2,000 for IP's failure to pay certain benefits. From the decision and judgment of the WCJ, the plaintiff perfects this appeal.

Discussion

TTD or SEB
Holden first contends that the WCJ committed error of law when she ruled that his temporary total disability benefits (TTD) terminated on December 13, 1996 and that supplemental earnings benefits (SEB) applied thereafter. He argues that it was not until June 1997, at the earliest, that Dr. Goodman released him to return to some form of light work with restrictions.[1]
*444 La. R.S. 23:1221(1)(c) allows "compensation for temporary total disability ... only if the employee proves by clear and convincing evidence ... that the employee is physically unable to engage in any employment or self-employment, ... notwithstanding the location or availability of such employment." Thus, a worker who can perform light duty work is not entitled to temporary total benefits. Cleveland v. Delhi Guest Home 29,506 (La.App.2d Cir.5/7/97), 694 So.2d 607, citing Mayeux v. Kentucky Fried Chicken, 28,163 (La.App.2d Cir.4/3/96), 671 So.2d 1261, writ denied 96-1133 (La.6/7/96), 674 So.2d 966. The WCJ's fact determinations regarding disability are subject to the manifest error rule. Nubles v. H & J Employment Service, 25,792 (La.App.2d Cir.5/4/94), 637 So.2d 648.
In his testimony, although Dr. Goodman indicated that the plaintiff could not return to the physically demanding wood yard position at IP, the doctor confirmed that Holden could begin to perform some light work activity by December 13, 1996. Therefore, based upon the jurisprudence regarding an injured employee's transition from a TTD status to an SEB status, the evidence does support the WCJ's ruling and no manifest error has been demonstrated.

Application of La. R.S. 23:1225(C)(1)
Immediately after Holden's accident, he began receiving benefits under IP's private disability plan before either Holden or IP was aware that worker's compensation benefits applied. Despite IP's refusal to pay worker's compensation benefits, the company disability plan continued to pay Holden through the time of trial, and IP sought a credit for those payments. Holden nevertheless claims that IP is not entitled to any credit under La. R.S. 23:1225(C)(1) for the company disability plan benefits. Alternatively, Holden claims the WCJ was in error in allowing the credit prior to the date of judicial demand for this offset.
La. R.S. 23:1225(C)(1) provides that:
If an employee receives remuneration from:
(a) Benefits under the Worker's Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other worker's compensation benefits, then worker's compensation benefits under this chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from subparagraphs (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of the average weekly wage.
In Garrett v. Seventh Ward General Hosp., 95-0017 (La.9/22/95), 660 So.2d 841, our supreme court discussed the legislative intent for Section 1225(C)(1), stating:
Our construction of Section 1225 C(1)(c) as including Social Security disability benefits is bolstered by the clear legislative intent behind the 1983 amendments which engrafted Section 1225 C(1) onto the previous wage-loss benefit coordination provision now contained in Section 1225 A. Those 1983 amendments were part of a substantial revision of the Louisiana Workers' Compensation Act, the overall purpose of which was to reduce the cost of workers' compensation for Louisiana employers. H. Alston Johnson, Bound in Shallows and Miseries: The 1983 Amendments to the Workers' Compensation Statute, 44 La. L.Rev. 669, 705 (1984). Construction of Section 1225 C(1)(c) as excluding Social Security disability benefits would thus be contrary to the overall legislative purpose of the 1983 amendments to reduce employers' compensation liability. Further, such a construction would be contrary to Section 1225 C(1)'s apparent legislative purpose of broadening the scope of benefits *445 which may be used to reduce the employer's workers' compensation obligation. Still further, such a construction would permit the exact duplication of benefits that benefit coordination provisions like Section 1225 are designed to preclude.
Thus, when an employee receives, in addition to worker's compensation benefits, the benefits under another (non-worker's compensation) disability plan funded by the employer, the employer is entitled to an offset of the benefits received by the employee from the separate disability plan.
While not denying that IP alone funded its employee disability plan, Holden claims that each employee of IP earned his short term/long term disability benefit, along with benefits from other company programs, as a form of untaxed compensation for employment. IP's representative testified that IP is self-insured for disability benefits and that nothing was ever deducted from Holden's paycheck to fund any portion of the benefits. IP filed into evidence proof of all payments made to Holden. Thus, regardless of Holden's emphasis on his vested entitlement to the company disability benefits under his employment relationship with IP, the statute allows IP a credit for these benefits solely on the basis of the funding of the plan. IP's funding of this plan clearly provides it a credit under Section 1225(C)(1).
Regarding the timing for the application for the credit, we reject Holden's assertion that IP is denied the benefit of Section 1225(C)(1) and that the employee may claim, in the words of Garrett, "duplication of benefits" until the employer makes judicial demand. Such requirement for judicial demand is not found in the statute and would thwart the benefit to the employer recognized in Garrett. In this case, Holden was initially making no claim for worker's compensation benefits; therefore, IP paid the private disability benefits with no knowledge of any dispute that would require judicial demand.
The requirement for judicial demand for the employer's offset has its origin in the case of Lofton v. Louisiana Pacific Corp., 423 So.2d 1255 (La.App. 3d Cir.1982), and Holden relies on cases which have followed Lofton. See, Necaise v. A.C. Co. of South Louisiana, Inc., 499 So.2d 1074 (La.App. 3d Cir.1986) and Holmes v. International Paper Company, 559 So.2d 970 (La.App. 2d Cir. 1990), where this court in dicta discussed the requirement for judicial demand. In Lofton, the employer had been previously adjudicated to pay worker's compensation benefits, and thereafter, it sought to modify that existing judgment to reduce its worker's compensation obligation because the employee had begun to receive social security disability benefits. Lofton therefore is a Section 1225(A) case involving the coordination of payments of disability benefits not solely by the employer, but by the employer and the Social Security Administration under the special mathematical calculations for the so-called "reverse offset" which Lofton applied.
Although a requirement for judicial demand may be necessary to modify an existing worker's compensation judgment or to mark the time for the coordination of the adjustments to the disability benefits paid by the employer and the social security administration, there is no necessity for the application of this jurisprudentially created rule in this instance. Recently, relying upon Garrett's discussion of Section 1225(C), the Third Circuit Court of Appeal has itself rejected Lofton's requirement for judicial demand in applying Section 1225(C) for the credit of employer-funded disability payments. Lachney v. Johnson & Johnson/Ortho Biotech, 96-724 (La.App. 3d Cir.2/19/97), 689 So.2d 691, writ denied 97-0737 (La.5/1/97), 693 So.2d 741.
Attorney's Fees
The WCJ ruled in this case that IP owes the maximum $2,000 penalty under La. R.S. 23:1201(F) for failure to timely pay Holden's worker's compensation benefits. Nevertheless, relying on La. R.S. 23:1201.2, the WCJ also found that IP did not act arbitrarily, capriciously or without probable cause in contesting whether a work-related accident had occurred and in "having Mr. Holden file a 1008" claim.[2] Since confusion abounded *446 and was caused significantly by Holden's reports concerning the nature of the injury and its cause, the WCJ viewed IP as reasonably controverting the claim apparently until the time that Dr. Goodman's deposition was taken in May 1997, some eight months after the initiation of this suit. Dr. Goodman's deposition clearly establishes that Holden's rupture of the cervical discs could have resulted from the work-related incident of March 29, 1996 and explains how the initial symptoms resembled the symptoms of stroke. In July 1997 when the case was tried, IP provided no medical testimony to the contrary.
In this appeal, while IP accepts the imposition of the $2,000 penalty and makes no appeal, Holden asserts that the WCJ's failure to also impose attorney's fees was an abuse of the WCJ's discretion. In reviewing this issue, we initially note that the WCJ's ruling overlooks the fact that Section 1201(F)[3] also provides for the imposition of attorney's fees under the same reasonable controversy test applicable for the $2,000 penalty. As we stated in Allen v. Louisiana Wood Moulding Corporation, 29,947 (La.App.2d Cir.1/23/98), 706 So.2d 636:
Section 1201(F)(2) provides that an employer that does not "reasonably controvert" a claim and fails to provide payment of benefits shall be liable for attorney fees. Section 1201.2 provides that an employer that discontinues payment of claims in a manner which is "arbitrary, capricious, or without probable cause" shall be liable for attorney's fees.
Previously, after the 1983 amendments to the Act, the former of these tests, the reasonable controversy test, had applied only for the imposition of penalties whereas the latter test, the arbitrary and capricious test, had applied only for the imposition of attorney's fees. See former La. R.S. 23:1201(E) and 1201.2 prior to 1995 legislation. Nevertheless, the post-1983 jurisprudence did not draw any significant distinction between the two and at times articulated the test for both penalties and attorney's fees as a single test. See, e.g. Bowens v. General Motors Corporation, 608 So.2d 999 (La.1992), where the defendant was found to be "unreasonable" (as opposed to arbitrary or capricious) in its assertion of a defense and found liable for attorney's fees.
Although the test for penalties and attorney's fees may be indistinguishable under both statutes as applied to this case, we cannot dispute the WCJ's assessment that IP was reasonable in controverting Holden's claim because of the factors noted above in footnote 2. Although Dr. Goodman's diagnosis of a work-related injury existed in May 1996 at the time of Holden's surgery, there is no evidence that the confusion existing around the claim and its work-relatedness was ever clarified by the plaintiff until long after the suit. Unlike the WCJ's apparent ruling regarding penalties, we cannot say that IP's opposition based upon the asserted lack of a work-related accident became unreasonable at some point after the suit was filed. The procedural device of summary judgment was available to the plaintiff to *447 bring the undisputed medical testimony of Dr. Goodman in focus to clarify the prior confusion and to force IP to either dispute such testimony or be cast in judgment. Finally, as an additional factor in this case, Holden was receiving at least $379 per week in disability benefits provided under IP's employer-funded disability plan throughout the entire controversy, and the controversy regarding IP's right to claim credit for those disability payments remained in dispute throughout this litigation with IP's position prevailing. Accordingly, we do not find that the WCJ abused her discretion regarding the denial of attorney's fees in this case.

Conclusion
For the reasons set forth above, we hereby find the rulings of the worker's compensation judge to be correct. The decision is affirmed. Costs of this appeal are assessed to the appellant.
AFFIRMED.
NOTES
[1] Plaintiff's high wage rate placed him at the $330 maximum weekly benefit applicable for both his temporary total disability benefits and supplemental earnings benefits. See La. R.S. 23:1202. Despite the determination that he was capable of performing light work, the WCJ's ruling regarding the effective date of SEB eligibility did not affect his continued entitlement to the $330 maximum since IP did not attempt to show that any small amount of wages that Holden could earn would have caused a reduction in such entitlement.
[2] The WCJ noted and the record reveals the following factors upon which IP relied in denying the claim:

(1) Medical records showed that Holden reported a 10-day history of neck pain on April 4, 1996, which would mean his neck pain predated March 29, 1996, the date on which he claimed he was injured.
(2) Some medical reports gave a history of neck pain while Holden was moving heavy equipment, a history inconsistent with the injury described by Holden to IP's representative.
(3) Dr. Goodman's bills all stated that the condition was not work-related.
(4) There were diagnoses of arthritis and stroke.
(5) Holden failed to report any injury from a work-related incident.
[3] La. R.S. 23:1201(F) provides, in pertinent part: "Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:... (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control."