828 So.2d 150 (2002)
Kathleen Ann FEILD, Plaintiff-Appellee
v.
GENERAL MOTORS CORPORATION, Defendant-Appellant.
No. 36,339-WCA.
Court of Appeal of Louisiana, Second Circuit.
September 18, 2002.
*153 Lunn, Irion, Salley, Carlisle & Gardner, by Joseph Martin Lattier, Shreveport, Counsel for Defendant-Appellant.
McBride & Collier, by Robert M. Hanna, Alexandria, Counsel for Plaintiff-Appellee.
Before BROWN, PEATROSS and HARRISON (Pro Tempore), JJ.
HARRISON, Judge Pro Tempore.
The employer, General Motors ("GM"), appeals a judgment finding that the claimant, Kathleen Feild, sustained a work-related mental injury and awarding her temporary, total workers' compensation benefits. Ms. Feild answers the appeal, contesting the portion of the judgment that reduced her compensation benefits by sickness and disability benefits funded by GM. Ms. Feild also contests the denial of her claim for penalties and attorney fees. For the reasons expressed, we affirm.

Factual background
Ms. Feild was a 13-year employee of the GM assembly plant in Shreveport. In August 1998, she was on the chassis line and earning an average weekly wage of $820. On August 17, 1998, she injured her left hand when a "nut cross-threaded and * * * the gun twisted around," throwing her wrist under the frame and turning her body against the frame. The parties stipulated that the hand injury was work-related. The principal issue in the case was whether this injury caused a recurrence of acute depression and panic disorder that made her unable to work.
Ms. Feild reported the accident to plant medical, which sent her to Willis-Knighton South. Doctors there diagnosed an acute finger sprain, placed her in a splint and ultimately referred her to an orthopedist, Dr. J. Lee Etheredge. In office visits in late August and early September 1998, Ms. Feild told Dr. Etheredge that she had been working light duty while wearing the splint but was still having finger and wrist pain. She testified that Dr. Etheredge ordered her not to use her left arm and wrist; the doctor testified that finding no objective symptoms, he restricted her from repetitive gripping, pushing, pulling, or lifting over three pounds with her left hand. Ms. Feild, however, testified that GM would not honor any of the medical restrictions, placing her in a different department where she had to lift boxes of bolts that weighed 20-30 lbs. Ms. Feild testified that when she presented her medical restrictions on September 29, 1998, GM's plant medic, a Dr. Kakani, sent her away saying, "GM didn't need a one-armed person."
Ms. Feild, who has a medical history of recurring major depression, testified that she suffered an immediate panic attack, could not breathe, and began to vomit as she left the plant. Dr. Kakani's remark "destroyed" her, as her work at GM "was everything." The initial panic attack deepened into major depression. While she was at home and unable to work, financial problems mounted and family conflicts grew, especially with her adult children and elderly mother. In addition, she was *154 gripped by the sense that GM was mistreating her, denying that her injuries were work related and withholding money from her.
Ms. Feild was admitted to Charter Brentwood Behavioral Health Center for a week in October 1998 for inpatient mental treatment. Her attending physician, Dr. Dean Robinson, confirmed that she was suffering from recurrent major depression and was essentially unable to function. He advised her not to return to work at GM until she is totally recovered from depression.
Her treating psychiatrist, Dr. George Armistead, agreed that Ms. Feild remains unable to work, and found that her mental condition had actually deteriorated since her stay at Brentwood. Like Dr. Robinson, he noted her extensive history of depression prior to the August 1998 injury and conceded that other significant stressors contributed to her condition, especially conflicts with her adult children and having to take care of her elderly mother. However, her life situation had never been debilitating until the August 1998 hand injury, with the ensuing rejection by GM, loss of work and income, and loss of her "caregiver" role with her family.
A third psychiatrist, Dr. Clif Dopson, had examined Ms. Feild at GM's request in 1986 and 1991 for episodes of depression that "usually came after" intense struggles with work. After an examination in late 2000, he agreed with the other doctors' diagnosis of major depression and panic disorder. However, he thought her current illness was a "fresh injury," not a recurrent condition, and he declined to say that an accident in 1998 was its major cause. He could not rule out family problems, financial difficulties and chronic fibromyalgia as equally important causes of her depression.
GM never paid Ms. Feild any workers' compensation benefits. Instead, she received other benefits pursuant to employer-funded programs. In July 1999 (11 months after the accident), GM paid her sickness and accident ("S & A") benefits of $4,946, retroactive to September 1998. When these temporary benefits expired, she received extended disability benefits of $432 a month, followed by permanent and total disability benefits of $574 a month.
Ms. Feild filed this disputed claim on August 17, 1999. She prayed for wage benefits only. By pretrial statement, however, she also claimed she was entitled to penalties and attorney fees. By answer, GM asserted "all rights to reduce benefits as provided in La. R.S. 23:1206 and 23:1225."
The matter was tried in August 2001. Only Ms. Feild and Randy Weeks, an investigator for the claims management service retained by GM, testified. Four expert medical depositions and various medical records were admitted by stipulation. By oral reasons, the WCJ found that Ms. Feild met her burden of proving that her mental injury was directly linked to the physical injury and otherwise met the requirements of R.S. 23:1021(7)(c) and (d). She therefore awarded temporary, total benefits effective August 17, 1998 and continuing in accordance with the law.
The WCJ further found that the S & A and extended disability received by Ms. Feild were funded by GM, and thus her workers' compensation award was subject to credit for these benefits under R.S. 23:1226 C.[1] Finally, she found that GM *155 reasonably controverted Ms. Feild's claim by showing many other stress factors that could have caused her depression, and thus she was not entitled to penalties and attorney fees.
GM appealed, raising two assignments of error. Ms. Feild answered, responding to GM's assignments and raising two of her own.[2]

Discussion: Proof of compensable mental injury
By its first assignment GM urges that the evidence fell far short of proving that Ms. Feild sustained a compensable mental injury. GM cites the clear and convincing evidentiary standard of R.S. 23:1021(7)(c) and (d), and argues that prior to this injury, Ms. Feild already had a plethora of emotional stressors that had resulted in a diagnosis of major depression as early as 1986 and required hospitalization. It also argues that the hand injury, which allegedly prompted this episode, was very minor and cannot reasonably be linked to a bout of major depression. It argues that the psychiatrist who treated her at Charter Brentwood, Dr. Robinson, found that she was "predisposed to recurring depression," and declined to state that this episode was related to the hand injury. Finally, GM questions Ms. Feild's credibility, notably that she went to other health care providers after the hand injury, complaining of chronic back and neck problems and emotional problems with her family, but did not mention the hand injury or attribute to it her current state of clinical depression.
To recover benefits under the workers' compensation law, an employee must establish that she received a personal injury by accident arising out of and in the course of her employment. La. R.S. 23:1031 A. Mental injury caused by physical injury is compensable if the requirements of R.S. 23:1021(7)(c) and (d) are met:
(c) Mental illness caused by physical injury. A mental injury or illness caused by physical injury to the employee's body shall not be considered a personal injury arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.
(d) No mental injury or illness shall be compensable under * * * Subparagraph * * * (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
See also, Charles v. South Central Indus., 96-0883 (La.11/25/96), 683 So.2d 706; Traweek v. City of West Monroe, 30,571 (La.App. 2 Cir. 5/13/98), 713 So.2d 655, writ denied 98-1936 (La.11/6/98), 727 So.2d 449.[3] The "clear and convincing" standard is a heavier burden of proof than the "preponderance of the evidence" standard normally applied in civil cases, but less than the "beyond a reasonable doubt" standard applied in criminal cases. Renter v. Willis-Knighton Med. Center, 28,589 (La.App. 2 Cir. *156 8/23/96), 679 So.2d 603. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, i.e., much more probable than its non-existence. Mitchell v. A T & T, 27,290 (La.App. 2 Cir. 8/28/95), 660 So.2d 204, writ denied 95-2474 (La.12/15/95), 664 So.2d 456.
The workers' compensation law is remedial in nature so its provisions should be liberally construed in favor of the claimant. Charles v. South Central Indus., supra. Despite the liberal construction of the statute, the claimant's burden of proof is not relaxed. Martin v. Olsten Indus. Services, 98-0463 (La.9/18/98), 718 So.2d 404. Reviewing courts must analyze claims of disability caused by mental conditions with the utmost caution, given the nebulous characteristics of mental conditions and the possibility that symptoms may be easily feigned. Charles v. South Central Indus., supra; Traweek v. City of West Monroe, supra.
The factual findings of the WCJ are reviewed under the manifest error rule. They are not to be reversed unless they are without reasonable factual basis and plainly wrong. Hoy v. Gilbert, 98-1565 (La.3/2/99), 754 So.2d 207; Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706.
Ms. Feild's medical history is not disputed. During her 13 years at GM, she had reported 15 prior work-related injuries, several of which resulted in physical and emotional problems. She had been admitted to Charter Forest for six days in late 1986 for major depression; she underwent psychiatric treatment with Dr. Dopson from late 1991 through early 1993. At these times she was plagued with family problems, including a divorce and "crazy children"; she also reported sexual abuse as a child. From late 1993 through early 1995, she sought treatment from Dr. Armistead, complaining of problems with her children and the situation at GM. In late 1996, she saw a rheumatologist, Dr. Susan Williams, for an assortment of problems, including back and shoulder pain and headaches. Dr. Williams diagnosed fibromyalgia and "depression secondary to medical illness." Just one week before the hand injury, she saw her family doctor, Dr. Melanie Frederick, who diagnosed depression attributed to "problems with 27-year-old daughter" and recommended psychotherapy.
Ms. Feild maintained that until the accident in August 1998, she had always been able to resume functioning and return to work. Since then, she has not; the hand injury was the "straw that broke the camel's back." The medical evidence supports her.
Dr. Armistead confirmed that family stressors had been present all along, but she had dealt with them well over the years. While the exact cause of depression is hard to discern, he stated that "in light of other factors," it was "much more probable than not" that the cause of her depressive disorder was the hand injury. Armistead dep., 88. Dr. Robinson testified that "cause" is not a medical term, but that her predisposition to depression was the most obvious cause of her current condition. He described the work injury as a "contributing factor," but an important one that accelerated her depression by making her unable to work, increasing her frustration and diminishing her role as caregiver for her family. Robinson dep., 43-45. Dr. Dopson testified that a myriad of factors contributed to her condition, and he declined to say that the hand injury caused her current depression. However, he admitted that prior to that accident she had always been able to return to work, and her work kept her "on track." He also *157 admitted that losing her ability to work would diminish her self-esteem and ability to function, and increase her financial concerns. Dopson dep., 59-61.
In short, the medical evidence supports a finding that prior to the hand injury, Ms. Feild had numerous psychiatric and physical problems, but they were manageable with therapy and medication. The hand injury upset the equilibrium and magnified her problems to the point that she was completely unable to work. On this record the WCJ was entitled to find clear and convincing evidence that despite her other conditions, Ms. Feild's hand injury was the catalyst for and cause of her major depression. See, Traweek v. City of West Monroe, supra.
GM also contends that Ms. Feild's credibility problems undermine the WCJ's conclusion. She went to various health care providers after the hand injury (LSU Medical Center in April 1999, Dr. Staats in May 1999, and Dr. Broadwell in September 1999), and complained about chronic back and neck pain, but did not mention the hand injury. Although she initially reported a wrist injury to her treating psychiatrist, Dr. Armistead, she never mentioned it again after November 1998, focusing instead on her chronic back and neck pain and family problems. Dr. Dopson, who examined her in late 2000, testified that she never told him about her hand injury, only her shoulder and neck pain. GM argues that if Ms. Feild herself did not consistently ascribe her depression to the hand injury, the judgment doing so must be wrong.
Contrary to GM's argument, Dr. Armistead described Ms. Feild as a "very truthful patient and reliable." Dr. Robinson found her complaints "consistent," and added that a depressed person can never give a totally accurate patient history. The failure to tell a health care provider that a particular injury was work-related is not necessarily fatal to the claim. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La. 1992). On this record, the WCJ was not plainly wrong to accept Ms. Feild's trial testimony and discount her failure to report the hand injury to all her health care providers.
Finally, GM contends that the hand injury was relatively minor and thus cannot reasonably be linked to major depression. Indeed, Dr. Robinson described the hand injury as "relatively minor," but conceded that if it kept her from working, it would be "not insignificant from her standpoint." Robinson dep., 33, 46. In general, the issue is not whether the physical injury is short-lived and unlikely to cause lasting physical effects. The critical inquiry is whether psychiatric testimony can conclusively link the physical trauma to the mental illness. Traweek v. City of West Monroe, supra. On this record, the WCJ was entitled to find a compensable mental illness even though the precipitating physical injury was relatively minor.
This assignment of error lacks merit.

Credit for disability benefits
By her third assignment of error, Ms. Feild urges the WCJ erred in awarding GM a credit against her compensation benefits. She advances three arguments. First, while a credit may be due under R.S. 23:1225 C(1)(c), she argues that faxed copies of computer printouts and the testimony of the claims adjuster were inadequate to establish the credit, despite the relaxed evidentiary standard of compensation cases, R.S. 23:1317. Second, she argues that even if her S & A and extended disability benefits were properly credited, her retirement benefits were not; these are not included in the list of eligible items in R.S. 23:1225 C(1). Finally, she argues that even if all credits were proper, they *158 could not be allowed until the date of judicial demand, September 24,1999.
When an employee receives, in addition to workers' compensation benefits, the benefits under another (non-workers' compensation) disability plan funded by the employer, the employer is entitled to a credit for the benefits received by the employee from the separate disability plan. Holden v. International Paper Co., 31,104 (La.App. 2 Cir. 10/28/98), 720 So.2d 442, writ denied 98-2956 (La.1/29/99), 736 So.2d 834, and citations therein. The credit or offset is defined by La. R.S. 23:1225 C(1):
(C) (1) If an employee receives remuneration from:
(a) Benefits under the Louisiana Workers' Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability plans in the proportion funded by an employer.

(d) Any other workers' compensation benefits, then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the workers' compensation benefit, so that the aggregate remuneration from Subparagraphs (a) through (d) of this Paragraph shall not exceed sixty-six and two-thirds percent of his average weekly wage. (Emphasis added.)
The employer has the burden of proving both its entitlement to and the amount of this credit. Matthews v. City of Alexandria, 619 So.2d 57 (La.1993). The WCJ is not bound by technical rules of evidence or procedure, but all findings of fact must be based on competent evidence. La. R.S. 23:1317 A. The manifest error rule applies equally to findings based on live testimony or documentary evidence. Shephard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308; Virgil v. American Guar. & Liab. Ins. Co., 507 So.2d 825 (La.1987).
Ms. Feild's first argument is that the only evidence GM offered to prove its credit was the testimony of Randy Weeks, an investigator for GM's claims management provider, and computer printouts. Mr. Weeks testified that GM paid Ms. Feild S & A benefits for the period from September 29, 1998 through July 16, 1999, and that when these expired, she began drawing extended disability benefits of $391.94 a month and permanent and total disability benefits of $574 a month. He also testified that all of these benefit programs were funded 100% by GM. However, he admitted he did not participate in any decisions regarding the payment of benefits, did not issue or order the issuance of any of the checks, and was unable to explain the computer printouts that reflected the payments. Admittedly, the printouts are not a model of clarity, but Ms. Feild did not deny receiving the checks. Given the relaxed standard of evidence in compensation trials, the WCJ was entitled to accept the printouts at face value. We therefore distinguish cases that rejected the credit for a total absence of evidence, such as Traweek v. City of West Monroe, supra, or Romero v. Northrop-Grumman, 01-0024 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, writ denied 01-1937 (La.10/26/01), 799 So.2d 1144.
Ms. Feild's second argument is that the WCJ erred in allowing credit for retirement benefits. She correctly shows that R.S. 23:1225 does not allow reduction for retirement benefits based on tenure. Matthews v. City of Alexandria, supra; Traweek v. City of West Monroe, supra. The record, however, does not show that *159 she received any retirement benefits. Mr. Weeks testified that GM paid her three types of benefits, but not retirement benefits, and the printouts support this.[4] Moreover, Ms. Feild testified that she saw Dr. Thomas Staats, a neuropsychologist, for an SSI evaluation in May 1994, and that she received SSI. This would be inconsistent with retirement status. We find no improper award of credit to GM.
Finally, Ms. Feild urges that even if the credits are otherwise proper, they can apply only from the date of judicial demand, September 24, 1999. Contending that R.S. 23:1225 is not self-activating, she cites Cross v. Travelers Ins. Co., 619 So.2d 610 (La.App. 2 Cir.1993), and a dissent in Lachney v. Johnson & Johnson/Ortho Biotech, 96-724 (La.App. 3 Cir. 2/19/97), 689 So.2d 691, writ denied 97-0737 (La.5/1/97), 693 So.2d 741. However, in the more recent case of Holden v. International Paper Co., supra, this court held that judicial demand is necessary "to modify an existing worker's compensation judgment or to mark the time for the coordination of the adjustments to the disability benefits paid by the employer and the social security administration." 720 So.2d at 445.[5] In the instant case, GM there was no existing judgment to modify and no social security benefits to apply. Ms. Feild did not seek compensation benefits until she filed her contested claim form on August 17, 1999. GM promptly requested the credit. The WCJ did not err in failing to make the credit effective only from the date of judicial demand.
This assignment of error lacks merit.

Penalties and attorney fees
By their final assignments of error, both sides contest the ruling as to penalties and attorney fees. GM contends that the matter was not properly before the court, as Ms. Feild did not allege it in her disputed claim and counsel objected to it at the start of trial. The WCJ, however, found that the issue was included in a pretrial order and in one of Ms. Feild's pretrial statements. Hearing Rule 2158 provides, "Only those issues listed in the Pretrial Statements of the parties shall be litigated at trial." La. Adm. C. 40:1.2158 A. Since the issue was included in Ms. Feild's pretrial statement, the WCJ was authorized to consider it.
Ms. Feild contends that GM did not reasonably controvert her claim, so the WCJ erred in denying penalties and attorney fees. She urges that GM offered no evidence to contradict the experts' unanimous finding that her depression and disability were related to a work injury.
Failure to provide compensation benefits shall result in the assessment of a penalty and reasonable attorney fees unless the claim is "reasonably controverted" or nonpayment results from conditions over which the employer or its insurer had no control. La. R.S. 23:1201 F(3). To meet this standard, the employer must have some "valid reason or evidence upon which to base his denial of benefits." Brown v. Texas-LA Cartage, 98-1063 (La.1/15/99), 721 So.2d 885. The court must determine whether the employer "engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." Id.; Sims v. Sun Chemical Corp., 34,947 (La.App. 2 Cir. 8/22/01), 795 So.2d *160 439. Penalties are stricti juris and should be imposed only when the facts clearly negate good faith and just cause in connection with the refusal to pay. Nowlin v. Breck Const. Co., 30,622 (La.App. 2 Cir. 6/24/98), 715 So.2d 112, and citations therein. The WCJ's decision to award or deny attorney fees is subject to manifest error review. Sims v. Sun Chemical Corp., supra.
The WCJ found that GM developed "unrelated factors regarding her family and other issues in Feild's life" that may have caused her mental injury. The alternative causes obviously troubled the experts and cannot be considered frivolous. On this record, the WCJ was not plainly wrong to find GM had a valid basis to deny the claim. These assignments of error lack merit.

Conclusion
For the reasons expressed, the judgment is affirmed at GM's cost.
AFFIRMED.
NOTES
[1] The judgment itself recited that the credit applied to S & A, extended disability and "pension disability benefits."
[2] Her answer to appeal also contests the WCJ's failure to award necessary medical expenses, but her brief completely omits this issue. We therefore deem it abandoned. URCA Rule 2-12.4; Boudreaux v. State, 01-1329 (La.2/26/02), 815 So.2d 7.
[3] All three psychiatric experts were licensed psychiatrists, diagnosed Ms. Feild with major depression and confirmed that this disorder is established by the DSM-IV. The requirement of R.S. 23:1021(7)(d) is therefore not an issue in the case.
[4] As noted, the judgment granted a credit for "pension disability benefits" in addition to the benefits described by Mr. Weeks.
[5] The majority reached the same conclusion in Lachney v. Johnson & Johnson, supra.